IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 22-56-KSM |
| | : | |
| JOSHUA INGRAM | : | |

**MEMORANDUM**

**Marston, J.**                                                                                                    **September 6, 2024**

Before the Court is Defendant Joshua Ingram's *pro se* Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to § 2255. (*See* Doc. Nos. 60, 63.) The Government opposes the motion. (Doc. No. 62.) For the reasons discussed below, the motion is denied.

**I.    BACKGROUND**

    **A.    Underlying Facts[1]**

On June 14, 2021, following an undercover law enforcement operation, Defendant was arrested for possessing and distributing methamphetamine to a confidential source ("CS"). (PSR at ¶ 19.) Defendant distributed methamphetamine to the CS on two occasions—first on May 21, 2021, and later on June 14, 2021. (*Id*. at ¶¶ 17, 19). After Defendant's second sale of methamphetamine to the CS on June 14, 2021, agents approached him. (*Id*. at ¶ 19.) Defendant fled but was caught and placed under arrest during the same encounter. (*Id*.)

Both sales of methamphetamine recovered from Defendant were sent to the DEA regional lab for testing. On March 16, 2022, the lab report was completed and stated that the

---

[1] The facts are taken from the factual statement included in the Presentence Report ("PSR"), dated April 12, 2023, which was adopted by the Court at the Sentencing Hearing. (*See* Sent'g Tr. at 9:11–14.) This factual statement also significantly overlaps with the recitation of facts given by the Government at the change of plea hearing (Plea Hr'g Tr. at 35:21–39:1), which Defendant stipulated "correctly appl[ied]" to him and which he "fully admit[ted] to" (*id*. at 39:2–8).

first distribution was 420.3 grams of pure methamphetamine and the second distribution was 1,273.1 grams of pure methamphetamine, totaling 1,693.4 grams.  (*Id.* at ¶¶ 17 n.4, 19 n.5, 20.)

### B. Ingram's Indictment and Guilty Plea

On February 23, 2022, Defendant was charged in an indictment with one count of aiding and abetting the distribution of 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2 (Count One), and one count of aiding and abetting the distribution of 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2 (Count Two).  (*See* Doc. No. 15 at 1–2.)  On January 9, 2023, Defendant pled guilty pursuant to a plea agreement to the lesser included offenses of Counts One and Two of the indictment, that is, distribution of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  (Doc. Nos. 41, 42.)  The Court accepted Defendant's guilty plea, finding, after a lengthy colloquy, that the plea was "knowing, voluntary, and intelligently made." (*See* Plea Hr'g Tr. at 42:15–24.)[2]  Pursuant to the terms of the negotiated plea agreement, the parties stipulated that at least 3,000 kilograms but less than 10,000 kilograms of converted drug weight[3] were possessed with the intent to distribute and that Defendant's guideline range should be calculated based on this amount.[4]  (Doc. No. 42 at ¶ 10(e).)  During the plea hearing, the

---

[2] As part of the plea agreement, Defendant "voluntarily and expressly waive[d] all rights to appeal or collateral[ly] attack [his] conviction, sentence, or any other matter relating to this prosecution," including the right to bring a collateral attack under 28 U.S.C. § 2255, except that he could bring a claim asserting "that an attorney who represented [him] during the course of this criminal case provided constitutionally ineffective assistance of counsel."  (Doc. No. 42 at ¶ 12(iv).)

[3] *See infra* n.5.

[4] Neither the Government nor defense counsel explained how this stipulation was reached in light of the analysis conducted by the DEA lab, which determined that Defendant's first distribution consisted of 420.3 grams of pure methamphetamine and the second distribution consisted of 1,273.1 grams of pure

Court confirmed Defendant's understanding that neither the Court nor the United States Probation Office was bound by this stipulation. (*See, e.g.*, Plea Hr'g Tr. at 25:5–28:19.)

    **C.**    **Advisory Sentencing Guideline Range**

Prior to Defendant's sentencing, the Probation Office prepared a PSR. The Probation Officer used the DEA lab reports to calculate Defendant's advisory sentencing guideline range. Because the offenses involved a total of 1,693.4 grams of pure methamphetamine, the corresponding converted drug weight was at least 30,000 kilograms but less than 90,000 kilograms.[5] (PSR ¶ 28); *see also* U.S. Sent'g Guidelines Manual § 2D1.1(c). Accordingly, Defendant's base offense level was 36, which after a three-level reduction for acceptance and responsibility, resulted in an adjusted offense level of 33. (PSR ¶¶ 35–37.)

The Probation Officer determined that Defendant's criminal history category was a category III based on three prior adult criminal convictions[6] as well as the fact that Defendant committed the instant offense while under probation from a separate criminal sentence. (PSR ¶¶ 39–44.) Thus, the Probation Officer determined that Defendant was a level 33 and criminal

---

methamphetamine, totaling 1,693.4 grams. It was only when the Court reviewed the PSR in advance of sentencing that the Court learned that the lab analysis was very different from the stipulation. The Court commented during the sentencing hearing that it appeared the lab results must not have been completed at the time the parties entered the plea agreement. (Sent'g Tr. at 8:3–9 ("[The Court:] It's my understanding at the time that you all agreed, meaning counsel, [to the plea agreement], I guess you didn't have the purity back on the lab results. So the probation office now has those lab results back.").) The Court now knows the parties had the lab results at least eight months prior to the plea hearing. The Court is disappointed that the Government did not correct the Court's inaccurate impression.

[5] The PSR shows that the offense involved 33,868.28 kilograms of converted drug weight: 1,693.4 grams of actual methamphetamine—converted to 33,868.00 kilograms—and 0.280 kilograms of marijuana. (PSR at ¶ 27); *see also* U.S. Sent'g Guidelines Manual § 2D1.1 Commentary at 8(D) (explaining conversion calculation). Together, this results in a total of 33,868.28 kilograms of converted drug weight. (PSR at ¶ 27.)

[6] The Court has previously granted in part Ingram's unopposed motion to correct a clerical error in the PSR report to reflect that Ingram was not convicted of exhibiting a deadly weapon on September 7, 2017. (Doc. No. 59.) However, as the Court stated in its previous Order granting that motion, this revision to the PSR does not impact the criminal history or criminal history category. (*Id.* at n.2.)

history category III, which resulted in an advisory guideline range of 168 to 210 months.  (PSR ¶ 82); U.S. Sent'g Guidelines Manual § 5A.

### D. Sentencing Hearing

Defendant was sentenced by the Court on May 24, 2023.  (Doc. Nos. 51, 52.)  Prior to the sentencing hearing, Defendant and the Government both moved for a downward variance.  (Doc. Nos. 47, 48.)  The Government agreed that the Probation Office had correctly calculated the advisory guideline sentence but stood by the terms of the negotiated plea agreement and argued that a variance was appropriate in order to reach the recommended sentence of 87 to 108 months that the parties had agreed to in the plea agreement.  (Sent'g Tr. at 9:23–10:6, 38:17–44:3.)  Likewise, defense counsel argued for a downward variance and asked the Court to consider a time served sentence of two years.  (*Id*. at 30:19–23.)  Defense counsel argued that a sentence of two years was appropriate because Defendant had a history of trauma and abuse, and there had been no parental guidance or "building blocks to make good decisions."  (*Id*. at 26:15–31:1.)

The Court determined that the Probation Office had correctly calculated Defendant's offense level of 33 and criminal history category III, which resulted in an advisory guideline range of 168 to 210 months imprisonment.  (*Id.* at 17:13–18.)  But after considering the arguments of counsel and reviewing the § 3553(a) factors, the Court granted the parties' motions for a downward variance.  The Court departed 5 levels to a level 28, which resulted in an advisory guideline sentence of 87 to 108 months.  (*Id*. at 49:25–53:13.)  The Court then sentenced Defendant to 108 months' imprisonment, followed by 3 years of supervised release on each count to run concurrently, a $1,200 monetary penalty, and a mandatory special assessment of $200.[7]  (*Id*. at 54:23–55:4, 60:20–22; Doc. No. 52.)  The Court entered judgment on May 24,

---

[7] The Court also entered an order of forfeiture in the amount of $4,500.  (*See* Doc. Nos. 50, 52.)

2023.  (Doc. No. 52.)

    **E.**    **Habeas Petition**

On May 8, 2024, Defendant timely filed the instant Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. § 2255 arguing his attorney was ineffective for failing to object to the drug weight calculated by the probation office in his PSR.  (Doc. No. 60).

**II.**    **DISCUSSION**

Defendant argues that because he pled guilty to distribution of a *mixture* and substance containing a detectable amount of methamphetamine, his defense counsel's failure to object to the PSR's converted drug weight range calculated by using the *actual* methamphetamine recovered, as determined by the DEA lab results, constituted ineffective assistance of counsel in violation of the Sixth Amendment.[8]  (Doc. No. 60 at 4, 15, 17–19.)  The Government argues that Defendant's motion is meritless because first, Defendant's claim is barred by his plea agreement, and second, because defense counsel was not ineffective for failing to object to the PSR's accurate drug calculation.  (Doc. No. 62.)

    **A.**    **Legal Standard**

Under 28 U.S.C. § 2255(a), a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence

---

[8] Defendant also argues that the distinction in sentencing between "actual" and "mixture" of methamphetamine is no longer appropriate because it is not based on empirical data, is not an accurate proxy for culpability, and creates unwarranted sentencing disparities between methamphetamine and other drugs. (Doc. No. 60 at 17.)  To the extent Defendant seeks relief because he disagrees with the policies underlying the statute and believes the law should be changed, Defendant's motion is denied.  *See* 28 U.S.C. § 2255(a) (permitting a prisoner to ask the court to vacate, set aside, or correct the sentence only if he claims that his sentence was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized law, or is otherwise subject to collateral attack.").

was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." Ineffective assistance of counsel claims, like those brought by Defendant, are properly raised in a § 2255 motion.  *See United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) ("A § 2255 motion is a proper and indeed the preferred vehicle for a federal prisoner to allege ineffective assistance of counsel.").

"The Sixth Amendment recognizes . . . the right to the effective assistance of counsel." *See Strickland v. Washington*, 466 U.S. 668, 685–86 (1984).  To show that counsel was constitutionally ineffective under the Sixth Amendment, a defendant must show:  (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." *Id*. at 687; *see also United States v. Booth*, 432 F.3d. 542, 546 (3d Cir. 2005) ("[A] criminal defendant may demonstrate that his representation was constitutionally inadequate by proving: (1) that his attorney's performance was deficient, i.e., unreasonable under prevailing professional standards; and (2) that he was prejudiced by the attorney's performance.").

Under the first prong, counsel's performance was deficient if he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  The broad phrase "effective assistance" encompasses counsel's "overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Id*. at 688.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.  "If a petitioner's claims are not meritorious, his attorney's failure to raise them does not constitute ineffective assistance of

counsel." *Robinson v. United States*, Criminal No. 03-385 (RBK), Civil No. 07-3115 (RBK), 2010 U.S. Dist. LEXIS 8847, at *12 (E.D. Pa. Jan. 27, 2010) (citing *United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000)).

Under the second prong, a defendant establishes prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In other words, an "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. Where a defendant entered a guilty plea, the prejudice prong considers whether "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

**B.     Analysis**

Here, Defendant fails at the first prong: he has not shown that his counsel's performance was deficient. Defendant argues that his advisory sentencing guideline range should have been based on his plea to the lesser included offense of distribution of a mixture and substance containing a detectable amount of methamphetamine and the parties' stipulation to the converted drug weight of 3,000 to 10,000 kilograms. (Doc. No. 60.) And Defendant claims that his counsel was deficient by failing to object and argue that the Probation Officer's finding based on the converted drug weight range from the DEA lab reports—that Defendant distributed 1,693.4 grams of actual methamphetamine—was improper. (*Id*.) But Defendant's argument does not acknowledge that, although the parties stipulated in the plea agreement to a specific converted drug weight range of a mixture and substance containing a detectable amount of methamphetamine, this stipulation was *not binding* on the Probation Office or the Court. In fact, Defendant's plea agreement stated, "these stipulations are not binding upon either the Probation

7

Office or the Court and [] the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed." (Plea Ag. at ¶ 10.)  Relatedly, during Defendant's plea hearing, the Court emphasized to Defendant multiple times that no one could guarantee what term of imprisonment he would receive at the time of sentencing and Defendant confirmed he understood.  (*See, e.g.*, Plea Hr'g Tr. at 25:5–28:19 ("[The Court]: Do you understand that I will not be able to determine the advisory guideline range for your case until after the presentence report has been completed.  And you and the government have had the opportunity to challenge the reported facts . . . and the sentence ultimately imposed may be different from any estimate your attorney has given you.  Do you understand that? [Ingram]: Yes. . . . [The Court]: At sentencing, your lawyer and the government can agree on facts and make recommendations, motions and requests, but I am not required to do what they ask me to do.  Do you understand that?  [Ingram]: Yes, I understand.").)

      Thus, there was no error when the Court declined to use the parties' stipulated converted drug weight of a mixture and substance containing a detectable amount of methamphetamine to determine the correct advisory guideline range, and instead, used the Probation Office's converted drug weight calculation, which in turn was based on the DEA lab reports.  *See United States v. Maurer*, 639 F.3d 72, 81 (3d Cir. 2011) ("[A] sentencing court is not bound by factual stipulations in a plea agreement and has discretion to make factual findings based on other relevant information." (citation omitted)); *United States v. Esperanza-Vasquez*, 696 F. App'x 567, 570–71 (3d Cir. 2017) ("Though Vasquez might have hoped that the District Court would have accepted the factual assertions and Guidelines calculations in the plea agreement, it was well within the District Court's discretion to make fact-findings and Guidelines calculations that

8

diverged from the stipulations in the plea agreement. . . . Additionally, Vasquez did not enter the plea agreement based on any pretense that the sentencing recommendations contained in the plea agreement were binding on the Court. Indeed, the plea agreement stated that the District Court was not bound by the factual stipulations or sentencing recommendations contained in the agreement, and before accepting the plea, the District Court asked Vasquez to confirm that he understood that the District Court had the discretion to give him a longer sentence than that recommended in the plea agreement."); *United States v. Johnson*, 812 F. App'x 329, 333–35 (6th Cir. 2020) (holding that although the defendant's plea agreement included a factual admission that the defendant had approximately 80 grams of a "mixture containing methamphetamine," this did not preclude the government from presenting additional facts at sentencing concerning the purity of that mixture, and holding that the district court did not err in determining the defendant's base offense level by the weight of the actual methamphetamine in the mixture); *United States v. Welborn*, No. 21-5425, 2022 U.S. App. LEXIS 11710, at *14–19 (6th Cir. Apr. 29, 2022) (holding that the district court was not constrained by the guilty plea's recitation that the offense involved only a methamphetamine mixture and that the district court did not err by looking beyond the plea agreement in determining the sentence).[9]

The Court understands that Defendant is disappointed that the Court did not use the parties' stipulation to the lower converted drug weight range in order to calculate his offense

---

[9] Defendant's argument that his sentence violates the rules of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, 570 U.S. 99 (2013) is inapposite. (Doc. No. 60 at 18.) *Apprendi* and *Alleyne* hold that "the facts that increase a defendant's statutory maximum or minimum sentence are elements of a crime that must be proved to a jury." *Welborn*, 2022 U.S. App. LEXIS 11710, at *16. But here, the Court's fact finding as to the proper converted drug weight to be used to calculate Defendant's offense level did not change Defendant's minimum or maximum statutory penalties. Defendant's statutory maximum remained 20 years' imprisonment, and because Defendant pled to the lesser included offenses of Counts One and Two of the indictment, Defendant did not face a mandatory minimum penalty. (Doc. No. 42.)

level and advisory guideline range. But this does not result in a finding that defense counsel was ineffective. Rather, as defense counsel recognized, the Probation Officer's use of the DEA lab reports to determine the converted drug weight range was proper and the Court was in no way bound to the parties' stipulation to the lesser converted drug weight range. Instead, defense counsel strategically chose to argue for a downward variance of the sentencing guidelines (*see* Doc. No. 48), and was ultimately successful because the Court granted a 5-level downward variance. After granting the downward variance, the Court sentenced Defendant within the same guideline range that would have resulted if the Court had accepted the parties' stipulation of the lower converted drug weight.[10] There is thus no basis to find defense counsel was ineffective, and Defendant's *Strickland* claim fails. *See Robinson v. United States*, 2010 U.S. Dist. LEXIS 8847, at *12 ("If a petitioner's claims are not meritorious, his attorney's failure to raise them does not constitute ineffective assistance of counsel.").

## III.  CONCLUSION

Defendant fails to show that he is entitled to habeas relief and his § 2255 motion is denied.[11] Because jurists of reason would not debate the procedural or substantive dispositions

---

[10] For this reason, Defendant was also not prejudiced when his counsel declined to object to the Court's use of the DEA lab reports in calculating the guideline range. In his plea agreement, Defendant stipulated to possession with intent to distribute of at least 3,000 kilograms but less than 10,000 kilograms of converted drug weight. (Plea Ag. at ¶ 10(e).) This calculation would have resulted in a base offense level 32. U.S. Sent'g Guidelines Manual § 2D1.1(c). After a three-level reduction for acceptance of responsibility, Defendant's adjusted offense level would have been 29. (PSR at ¶¶ 35, 36.) Considering Defendant's criminal history category of III and offense level of 29, Defendant's advisory sentencing guideline would have been 108 to 135 months imprisonment. U.S. Sent'g Guidelines Manual § 5A. Here, even though the Court found the Probation Office correctly calculated the converted drug weight as at least 30,000 kilograms but less than 90,000 kilograms, the Court ultimately sentenced Defendant to 108 months, the bottom of the guideline range which would have been recommended if the Court had accepted the parties' stipulation. Accordingly, Defendant was not prejudiced.

[11] Because it is clear from "the motion and files and records of the case . . . that the movant is not entitled to relief," the Court need not hold an evidentiary hearing. *Booth*, 432 F.3d at 545–46 (quotation marks omitted).

of Ingram's claims, there is no probable cause to issue a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An appropriate order follows.